147093 and again, with respect to rebuttal, we are, Mr. Remus, are you arguing? Okay. You want three minutes for rebuttal, is that correct? Yes. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.  Okay. You may proceed. May it please the court. This case is about an unreasonable decision by the government that it can't defend. The 2011 regulation was a corrective regulation and, therefore, it should have been made effective the date that the original rule was first applied. I'm going to make three key points about why the 2011 regulation's effective date is invalid. The first point I'll make is that the DVA's errors are what got us in this predicament. The second point will be about the DVA's authority to correct those errors. And, finally, I'll discuss the ongoing arbitrary effects of the invalid 2011 regulation's effective date. First, expanding on my first point, the reason that we're here talking about a 2011 regulation and whether it should have a 2003 effective date is entirely the result of the DVA's errors. Way back in 2003, the DVA selected an overly narrow arbitrary rule for a presumption of exposure for veterans who were serving in the Korean DMZ. The presumption applied to veterans who served while Agent Orange was actively sprayed, but excluded those veterans who were serving shortly thereafter while the residuals of those same harmful chemicals were present in the environment. Your underlying premise, of course, is that that 2003 manual was actually a rule that required public notice and comment. What's your authority for that proposition? Yes, Your Honor, that's correct. Our authority for that is that substantive rules are rules that have the force of law. The DVA here acknowledges that the 2011 regulation is a substantive rule that was subject to notice and comment, and the 2003 rule was no different. It simply afforded the same conceded presumption of exposure, but for a narrower period of service. Continuing, the DVA adopted this arbitrarily narrow rule, and then it improperly began to apply it, because as we just discussed, it was substantive. It was subject to notice and comment rulemaking procedures, yet the DVA failed to notice it for six years. When the DVA finally did so, it received comments from veterans organizations that led it to understand and acknowledge that the period of exposure it had adopted was overly narrow. The DVA even said so in the final rule notice for the 2011 regulation. It stated that it was going to be expanding the period of presumed exposure to include veterans who were there while residuals were present in response to those comments from veterans organizations that it would have received six years prior if it had properly promulgated the rule. What about the government's argument that the rule, the 2011 rule, is actually beneficial to veterans, and so therefore gives them a broader presumptive period of time, but it wasn't necessary for them to be beneficial to veterans. So in those circumstances, there's no obligation to make it retroactive. We agree that it was beneficial, and we don't argue with the substance of the period itself, but the DVA cannot act arbitrarily when it decides to act. When Congress set forward a period of coverage for the children of these veterans, it was logical as the DVA to extend that coverage to the veterans themselves. When the DVA did so for both the children and the veterans, it should have included a period of residual exposure because Congress said that it would be appropriate to extend coverage to periods of residual exposure. In the 2003 rule, and it had said so prior in the Agent Orange Act, when it created a presumption for Vietnam veterans. But the statute at issue here created a period of presumption with respect to the children of veterans, correct? Correct. Do you argue that the statute required regulations for presumptions as to the veterans themselves? No. This is an instance where the DVA was exercising its rulemaking authority to promulgate appropriate regulations to implement the laws of the Veterans Benefit Statute as intended by Congress, even if Congress has left a gap for it to fill. So, go ahead. Let me ask this, counsel. Would you agree with me that what we're arguing about here is not an actual taking or an award, but simply a change in the evidentiary standard that's applied? It is a property right, if that's what we're talking about. It is a right that veterans are... By changing the evidentiary standard away from a presumption in favor of to a requirement to produce affirmative proof of exposure, that is a property right? It's not just a simple change in the evidentiary standard to be applied? I agree that it's a change in the evidentiary standard, but it has the effect of changing a veteran's entitlement to property, to these benefits. As stated in Cushman, once the DVA is obligated to pay... It's a change in the ability of the veteran to show entitlement. Correct, Your Honor. And because entitlement... That ripens into a property right? That's your position? Yes. Let me follow up with this. Given that Mr. McKinney was deployed a month after, in August of 1969 instead of July of 1969, doesn't every new change require some start date somewhere? And by putting it in July as opposed to August, and him being unavoidably one of the first ones to be caught, is that in and of itself arbitrary and capricious? How do we get over the arbitrary and capricious standard? That's what I need to hear from you. And I acknowledge that the DVA has broad discretion. The reason that it was arbitrary to draw that line when they did is that Congress had already said that's not where the line should be drawn. Congress had acknowledged back in 1991 through the Agent Orange Act that Vietnam veterans who served for multiple years in Vietnam after Agent Orange was sprayed should be entitled to a presumption of exposure because residuals were present. In the 2003 Veterans Benefits Act, Congress essentially parroted that and said just like those Vietnam veterans, these Korean DMZ veterans should be entitled to coverage, excuse me, the children of the veterans, should be entitled to coverage beyond active spraying in 1969. So there was no reason, and it was illogical, for the DVA to implement a rule that didn't do so. Is illogical, arbitrary, and capricious? I mean, get us there, counsel. In the end, Congress has shown and recognized that it is really tough to establish evidence of actual exposure over four years ago. So whether a veteran was there during active spraying, or shortly after when everyone acknowledges the residuals of these chemicals would have been in the ground, in the water, everywhere, it was necessary to presume exposure because it's very, very likely that people serving in those areas were exposed to these toxins. And so it's just arbitrary to deny those veterans that presumption when it was already 2003. We really had explored Agent Orange in depth, and people knew that it stayed in the environment. We're not reviewing the logic of the 2003 manual, right? I mean, we're reviewing whether or not the decision to use the default presumption of non-retroactive effect was arbitrary or capricious as of 2011, right? Correct, Your Honor. The way the 2003 rule fits in is that it continues to apply as a result of the DVA's decision to select 2011 effective date. And so this bad rule is still operating on pending live claims for pre-2011 benefits. And because the DVA selected the 2011 regulations effective date knowing this would happen, that was an arbitrary and capricious selection. Let me ask you this, counsel. Is it possible that the DVA's failure to seek and receive public comment over an excessive period of six years, when, as you argue, they had a duty to do so, could be construed as arbitrary and capricious? And if it is, what effect would that have? The DVA's delay could... I'm not sure it would be characterized as an arbitrary and capricious violation of the rulemaking procedures because they violate... That's my question. Right. I guess I would say that it is. You know, there was no basis for it. And the arbitrary and capricious standard requires reasoned decision making. And there was no reasoned decision making in delaying comments for six years. And that's evidenced by the fact that the comments succeeded in changing the DVA's mind and correcting a problem. That's the whole reason we have the notice and comment period. All right. I'll continue. So the DVA's errors got us here. The question is, did the DVA have the authority to issue an earlier effective date? Section 5110G does not constrain the DVA in this case. In the context of a corrective regulation such as this, the earliest effective date allowed is the date of the original administrative issue. And the DVA acknowledges that... Excuse me. So the only question here really is, was it arbitrary for the DVA not to select a 2003 date for this regulation? The DVA acknowledges that when the court invalidates its regulation, it will apply retroactive effect to all pending claims. And the same should happen when the DVA on its own starts formalized rulemaking, corrects an invalid rule, what happens to the pending claims? It should be the same result. They should get retroactive relief, just as if the court had acted, which it may have done had they not settled with Mallory or other veterans who were challenging these rules. Finally, I want to talk a little bit about the arbitrary effects of the 2011 regulations effective date and how they're ongoing. And I'll just go briefly so I can save some time for rebuttal. It is arbitrary to treat a veteran who was exposed to active herbicide spraying differently than one who was exposed to the residuals of those same toxic chemicals. The DVA is continuing to do this for pre-2011 claims. And in fact, for the same veteran, based on the same service, the DVA will say that they suffered a service-connected injury for post-2011 claims, but for pre-2011 claims will say that they didn't. And that is an arbitrary and capricious result. In conclusion, Your Honors, the 2011 regulation is not a typical regulation, and it shouldn't have a typical effective date. The DVA's own errors compel an earlier effective date in this case, and we respectfully request that you grant our petition and that the effective date be set aside. Thank you. Mr. Hockey? May it please the Court. We're here to talk about the challenge, I think Judge Malley, as you indicated, to the regulation that was issued in 2011. I think we understood from our discussion just now that we are not challenging the manual provision itself. That kind of raises a response to a question you raised, Judge Gilstrap, about delays. There was nothing preventing anyone from challenging the manual provision in 2003 or 2004, saying that it was inconsistent with some statute. Well, you say it wasn't a substantive rule. I'm saying that there's nothing that prevents somebody from challenging it. We would have defended it by saying it wasn't a substantive rule. Right, you would have said it's just a manual. But to suggest that there wasn't a procedural vehicle by which someone could challenge it is wrong. Why did it take six years? Did what take six years? I mean, you put the 2011 out there for notice and comment. 2009 we issued that. Why didn't you put the 2003 out for notice and comment? We didn't need to. We addressed, first of all, and I'm going to say this right away. It's a presumption you created. Why did you need to in 2009? We decided to create. Why didn't we create the presumption in 2009? I don't know actually what the decision maker in 2009 decided about. Why do we want to issue a regulation as opposed to continue with the manual provision, which in some sense effectively accomplishes the same thing. But what we need to discuss here is, for purposes of this petition, what is the basis by which this Court can declare the Secretary's actions  And I think this Court's decision in Lease Gang, particularly at page 1377, answers all of this by pointing out that you need basically three things. You need to have a statute that tells the agency to do something, issue a regulation, and that statute needs to tell the agency to do something, issue that regulation within some time period. And, as the Court noted in Lease Gang, you need a third thing, which is that that statute needs to tell the agency that if they don't do that thing within a time period, there are going to be consequences. But isn't it true that Congress has spoken already twice with respect to these time frames, not necessarily with this precise presumption as to these Korean veterans, but with respect to Vietnam veterans and with respect to the children of Korean veterans? I mean, Congress had already acknowledged the science is such that it covers a long period of time. Well, the dates actually stem from the compromise. The Senate bill in 2003 used the date 68-69, consisting with DOD's recognition that that's when the spraying occurred. The House bill included dates from 68-75, I believe, and there was a compromise of 71. So I don't think that we can simply say that one date or the other is right or wrong. Even at the time of the contemplation of the act, the Spina Bifida Act, you have a Senate having the same dates that the VA adopted based upon the statements from the DOD, which said that we did the spraying in 68-69. Yes, there's science. We're not disputing the fact that there is science that might have supported a residual exposure. But what we are suggesting is that the only statute that anybody could identify that's even related to the 2011 regulation is the 2003 Veterans Benefits Act. But if we read the 2003 Veterans Benefits Act, not only does it not provide any kind of direction for the Secretary to issue a presumptive regulation for the Korean veterans themselves, frankly, it doesn't direct the Secretary to do anything with respect to the Spina Bifida. It says that the Secretary may provide certain benefits to children suffering from Spina Bifida in the same way that Vietnam veteran children were already being covered. So the Secretary is not required by the VBA of 2003 to issue any regulations. And you need that in lease-gain to start the whole process. Then you don't even get to the two other prongs in lease-gain that say you have to have language in the statute that says to the Secretary, do this then, and also language that says, and if you don't, here are the consequences. We don't have a statute telling the Secretary to issue this presumption. The Secretary did it on his own, as counsel correctly stated, and the timing of it is our own. The same 1377 lease-gain contains a footnote. You can look at this case different ways. Retroactive is being thrown around a lot, but in a sense, what the petitions are really saying is we should have acted sooner. We should have acted in 2003. So that makes it really much more like lease-gain. But there was no requirement to act. We don't have the statute telling us to do anything in 2003. What we did was we issued a manual provision on our own. We didn't even have to do that. And what supports your view that that manual provision didn't have a substantive effect? The problem for this Court right now is that's not what's before the Court. Nobody has challenged, or nobody did challenge. Now, I think the Mallory case, there was an argument that it wasn't fair, and that case was settled. But before this Court, it's not the issue of whether or not the 2003 manual provision should have been subject to notice and comment rulemaking. Yeah, I think the Mallory case is one of the things that does trouble me. I mean, I find it hard to accept the government's argument that the footnote is ambiguous. I mean, it says that if there are similarly situated veterans, they'll be treated in a similar fashion. All I can say, Your Honor, at this point is how do we enforce this in this context? First of all, you can't. A footnote in a settlement between government and a particular claimant creates a potential claim under the Tucker Act in contract. It does not bind the government and all the other regional offices and boards. Even if an attorney representing the Secretary says, we are going to try to treat these the same way. I mean, there are mechanisms by which people can get that kind of a treatment within the VA. My recollection of the wording of that footnote is it's even a little more weaselly than will treat. It seems to me it's something like may treat. But for purposes of this case, what this Court needs to look at and all it needs to look at, and it needs to look at it through the prism of the very high deference that's afforded the Secretary, as we indicated in our brief in our 28-J, apologies for that, that there's a high level of discretion here. Most, as the Supreme Court has said, and as this Court has said, the default in issuing a regulation is to issue it prospectively. There could be the exception, like this Court has said in Leisgang, where, like in the footnote in Leisgang where they basically said, if there is some unambiguous direction that suggests that the Secretary should issue something coming from Congress, suggesting that the Secretary should issue something retro, prospectively, an effective date, then this Court could say, you should do it. Here we don't even have a statute telling us to issue this regulation. But you say in your brief at 16 that although petitioners actually note VA has, in some prior instances, assigned retroactive effective dates to a certain number of licensing regulations, these circumstances, these occurrences have been rare, and for the most part involve clearly distinguishable circumstances. So, of course, I brought a marginal note to ask you, what's the other? Well, I think what we're probably trying to convey there is that certainly, as pointed out in the blue brief, some of these retroactive regulations deal with herbicide exposure in Vietnam. The problem with relying upon those cases is that the VA was reacting to the District Court in the Namur litigation, which was essentially directing a lot of this traffic. We can argue about whether they should have been doing that, but they did. And so that's what happened. The VA reacted by following the direction of the District Court. Now, I will add, as we point out in our brief, that that demonstrated to the VA how administratively difficult it was to monitor all these different claims and assign them the appropriate amounts in a retrospective fashion and further leads to the conclusion we made in this, you know, regulations to not do something similar when we weren't being directed by the District Court. And Congress itself, as we point out in subsequent legislation dealing with Agent Orange in Vietnam, required the issuance of the regulations to be prospectively recognizing VA's experience in trying to deal with the various directions coming from the District Court. So these are all the classic reasons why this Court should say the Secretary acted appropriately and not arbitrarily when he followed the sort of default provisions of issuing a regulation prospectively. Well, I mean, that's part of my problem with Mallory. It sort of smacks of this feeling like, okay, we've got a trial court that thinks we're not being fair. And so one trial court told us to take care of these Vietnam veterans. And we're afraid that if we go through with this Mallory appeal, there's going to be another court that tells us to take care of these Korean veterans. And so we're going to drop a footnote making it seem like we're going to take care of them. And then we don't. I cannot, I cannot, I did not participate in that. I can say this. I don't think this Court would question at all the government's right or the petitioner's right to resolve the matter to avoid a potential adverse decision. So, I mean, it happens all the time. You know, you have a bad fact pattern. You don't want to get a bad law. You settle the case. Mallory was seeking his own benefits. The fact that he may have had counsel who was interested in a larger picture and tried to negotiate some language in the settlement agreement that says, and we're going to do this in other cases. That doesn't do it. It doesn't do it for me. I mean, you have a contract. A settlement agreement is a contract. You're resolving your dispute with the government. And you can try to enforce that and go to a court and say, on behalf of somebody else, Ms. Jones should benefit from the settlement agreement we signed in Mallory. And the hard reality of it is the first question this Court is going to ask is, was Ms. Jones a party to that agreement? And the answer is no. Counsel, let me get back to the facts in this case a little bit. Comment, if you will, on the reality of what we have today in light of what's been done, such that competing veterans who all served in the same area at the same general time, exposed to the same chemicals, suffering the same results, are judged on two completely different standards, given the 45 years or so that's intervened making the practical results of this, that there are winners and there are ultimately losers. There are no losers with respect to the presumption. So somebody who gets a presumption in their favor is in no worse position than somebody who has an affirmative duty to go back and offer proof from 45 years ago? I'll explain. I'll explain. I mean, in normal civil litigation, when you have a liberalizing rule, for those folks who have already been through the process, and concepts of res judicata will prevent that person from coming back and renewing their claim. And in that situation, like in all liberalizing rules, when a line is drawn, you have folks who are on the outside looking in. But the beautiful thing about the VA process, as I think the court knows, is they have new material evidence claims. They have, basically, you can keep bringing your claim, so that any veteran who was denied benefits in 2005 because they fell outside that narrow window can come back today or tomorrow and make the same claim saying, look, you guys now have a presumption with the larger window which I now fall in, and he's granted his benefits. But he only gets benefits from 2019. The date of his claim, because it's a liberalizing rule. So, to answer your question specifically, Your Honor, there is a distinction. Those folks who did bring their action prior to the liberalizing rule and fell outside the period of service were denied at that time. They now can come in. The effect is, yes, there was some period of time in which they couldn't get the money. But the point is, in creating the regulation and the Secretary's decision to expand the service period, that's a liberalizing rule. Ten years of benefits for veterans these ages is a lot, is it not? Your Honor, I'm not going to deny the mathematics of that question. But the problem for this Court is, when the Secretary is not even required to issue a presumption regulation and does it on his own, can the failure to issue it retroactively provide this Court with a basis to take away, to change the effective date? And I would respectfully suggest that this Court's own precedent says no in this case. So you're saying that unless there are very precise, specific, itemized obligations or requirements imposed on the Secretary, which the Secretary then ignores, you just can't be arbitrary and capricious? That's what this Court said in Lee's gang. In Lee's gang, they actually had a statute that said, that kind of met the first two prongs. It says, you go do this. And there was a time period by which everyone expected the Secretary to do it. And even in that case, the Court said, we're not going to require the Secretary to issue something retroactively because in issuing the direction, Congress didn't provide the consequences. So the same conduct in the context of a specific directive that could be arbitrary and capricious can't be in the absence of very specific instructions. This runs up against the question you raised earlier, Your Honor, about the high level of deference owed to the agencies in issuing their own regulations. There has to be something pretty, pretty strong to be able to go in and say that you acted arbitrarily and capricious. Some of this is pretty, pretty bad. But there's nothing, no it's not. I think it's just, I think what Well, you didn't get to make that decision. We did. Well, but in this case, in order to make the decision that we did something wrong, you have to find, you know, what authority we ignored. And I'm respectfully suggesting to you that we didn't. We did do a beneficial thing here by creating the presumption. There's advantages, obviously, to having something take place in the form of a regulation and a manual provision. And by changing the presumption, by changing the evidentiary question and making it a regulation, it is now binding on all the ROs, it's binding on the board, and there's no question about whether the manual provision could survive a challenge. You know, so this is an advantage to the veteran community. And yes, in 2003, maybe everyone would be happier, but, you know, that's a different question and a different action. Thank you. Okay. Your Honor, I just want to respond to a couple points the counsel made. First and perhaps most importantly, the disparate treatment here is that veterans who were serving during periods of active spraying can recover benefits going back to 2003. But veterans who were there while residuals were in the environment cannot. And that's arbitrary, that distinction. But where's the directive? Mr. Hockey kept hammering on, we need a clear directive. So you're pointing to the Agent Orange Act and you're pointing to the 2003 Act, but isn't it true that the 2003 Act didn't address the veterans themselves, only their children? That's correct. It addressed their children. But when the DVA has the authority to issue appropriate regulations in response to Congress's directive, and it did so here when it extended what Congress was talking about with children to the veterans themselves. But it failed for both groups to create an appropriate rule in response to that legislation. It limited the rule arbitrarily to active spraying and excluded residuals, even though Congress had said, as counsel acknowledged, in the Veterans Benefits Act, that it was appropriate to extend coverage beyond 1969 when spraying ended. But the government's argument, I think, is that if they're allowed to make a rule, it can be less logical than if they're required to make a rule, essentially. I think the government is bound to always, they're always bound by the arbitrary and capricious standard, and it cannot issue arbitrary and capricious regulations. I think that's clear from the judicial review that Congress has granted in Section 502 and then governed by Section 706 as arbitrary and capricious and contrary to law standard. Another point that I would like to make is that we've been kind of exploring the question of whether there's causal difference between a person who is serving in periods of active spraying versus a period of residual exposure, and there isn't. I mean, that's what everyone has concluded, and they concluded it before 2003. Finally, I just want to spend 20 seconds talking about why the presumption is a substantive rule. Here, it has binding effect on veterans. It has the force of law because it changes their rights. In effect, through the presumption, they become entitled to service-connected benefits. Thank you, Your Honors. Again, we request that you grant our petition and the effective date be set aside. Thank you. The case will be submitted.